ALEXANDER TILLY, Plaintiff, *v.* THE NATIONAL CITY BANK OF NEW YORK, Defendant.

Supreme Court, New York County, November 13, 1933.

*Arnstein & Levy*, for the plaintiff.

*Shearman & Sterling* [*Joseph M. Proskauer* and *Otis McClellan* of counsel], for the defendant.

COTILLO, J. This application is made by defendant to remove the cause to the United States District Court on the ground that a corporation organized under the laws of the United States is a party, and the transaction involves international or foreign banking. This ground for removal was created by statute as of the effective date of June 16, 1933. The action itself was commenced by the service of a summons and complaint on June 6, 1933, and it is urged by plaintiff that the new statute applies only to actions instituted subsequent to June 16, 1933. Defendant argues that in matters of doubtful Federal jurisdiction the State

court should nevertheless order the removal if the bond is regular and leave it to the District Court to entertain an application for a removal. While such procedure may sometimes be advisable, it does not follow that the State court should act in a mere ministerial capacity.

Examining the motion on the merits and assuming the sufficiency of the bond, we must examine into the existence of the jurisdictional elements. In *Matter of Winn* (213 U. S. 458) it was said: " It is well settled that no cause can be removed from the state court to the Circuit Court of the United States unless it could originally have been brought in the latter court." And in *Ex Parte Wisner* (203 U. S. 449) it was held that the question of jurisdiction relates to the time of commencing the suit. When the action was instituted the statute provided that all national banking associations should be deemed citizens of the States in which they are located. (Act of March 3, 1911, chap. 231, § 24, ¶ 16 [U. S. Code, tit. 28, § 41, ¶ 16].) On June 6, 1933, therefore, Congress, in accordance with its power to define the jurisdiction of the Federal courts lower than the Supreme Court, specifically barred exercise of jurisdiction in a controversy between a national bank located in a given State and a citizen of the same State. On June 16, 1933, limited jurisdiction was conferred upon the Federal courts in certain controversies of this type by the following statute amending the Federal Reserve Act:

" Sec. 25 (b) Notwithstanding any other provision of law all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law."

It cannot be disputed that Congress had the right to confer the jurisdiction upon the District Court in the way it accomplished by section 25 (b). In fact, prior to 1911, the statute gave the District Court unlimited jurisdiction over suits by or against

national banking associations, and the right of Congress to do so was upheld in *Foss* v. *First National Bank* (3 Fed. 185; affd., *sub nom. Bissell* v. *Foss*, 114 U. S. 252). In 1911 this statute was modified as already stated, and thereafter limited jurisdiction restored by the recent statute. Hence, if at the time of the service of the summons and complaint, the District Court had no jurisdiction, the case did not become removable by reason of the passage of the Glass-Steagall amendment to the Federal Reserve Act, unless the law either expressly or by implication was retroactive. The removal statute now embodied in section 28 (U. S. Code, tit. 28, § 71) of the Judicial Code, providing for removal from the State court to the District Court, authorizes removal at the request of the defendant in all cases in which the District Court has jurisdiction. But section 29 (U. S. Code, tit. 28, § 72) limits the right to removal to a time prior to the due date of the answer. Another class of removable cases provided by section 28 involves diversity of citizenship only, and authorizes removal upon application to the District Court, on the ground of local prejudice. The right of removal in the latter class, absolute though it may be prior to answer, is qualified by the exercise of the sound discretion of the court, if application is made subsequent to the answer. The instant statute, on the other hand, gives an unqualified right of removal not only prior to answer, but at any time before trial. Such a radical statutory departure from the earlier policy, it seems to me, would require a clear indication in the language of the law itself, that it applies to pending suits, as well as to actions brought thereafter. While it is true that the new legislation was only a limited restoration of the jurisdiction of the District Court in intrastate actions involving national banks, as it existed prior to 1911, in a certain respect it went even further than such pre-existing statute, in authorizing removal as of right, *at any time before trial*.

It is significant that all previous removal legislation when first formulated, was, in terms, made to apply to pending actions. In the codification of the laws of the United States by the United States Code the application to pending actions was omitted only because such reference had become obsolete. No new principles applicable to removal were introduced by section 71, title 28, of the United States Code, and the omission of reference to pending actions was due to the fact that there could not in the nature of things be any remaining actions pending at the time of the passage of the appropriate removal statute, which still remained undisposed of. It should not, therefore, be assumed, without clear evidence of legislative intent, that a new type of removal statute would be passed, to embrace a new class of cases, with absolute right of

removal before trial, without explicit reference to pending cases, if it was the intent to make such provisions retroactive. The legislative history of removal statutes speaks against a retroactive interpretation and emphasizes the point that if the latter was intended, the law would have so stated.

The application for removal is, therefore, denied.