The FIRST NATIONAL BANK OF CHI-CAGO, etc., Plaintiff,

v.

Thomas E. MOTTOLA, Executor of the Estate of John D. Hertz, Jr., and individually; et al., Defendants.

No. 68 C 1987.

United States District Court
N. D. Illinois, E. D.

Feb. 4, 1969.

Edgar Bernhard, D'Ancona, Pflaum, Wyatt & Riskind, Chicago, Ill., for plaintiff.

James J. Kenny, Miami, Fla., John W. Hough, John R. F. Baer, Henry L. Mason, III, Leibman, Williams, Bennett, Baird & Minow, Chicago, Ill., for defendants; Kelly, Black, Black & Kenny, Miami, Fla., Spray, Price, Hough & Cushman, Chicago, Ill., of counsel.

## OPINION

WILL, District Judge.

This action is brought by the First National Bank of Chicago for the construction of a will. Plaintiff, as trustee, seeks instructions on whether the will of John D. Hertz, Jr., exercised testamentary powers of appointment given him under the terms of certain trusts established by his father and mother in 1922. Named in the complaint as defendants are Thomas Mottola, individually and as Executor of the Estate of John Hertz, Jr., and eleven other individuals and institutions.

It appears from the face of the complaint that one defendant, John Ettlinger, is a trust remainderman. He takes only if the powers of appointment were not exercised under the will. One defendant, Helen Hexter, is both a trust remainderman and a residuary legatee under the will. Except for the executor, all the other defendants are residuary legatees, who take only if the powers were exercised.

The complaint was originally filed on September 10, 1968, in the Chancery Division of the Circuit Court of Cook County, Illinois. On October 24, 1968, defendant Mottola, as executor, filed a petition, pursuant to 28 U.S.C. § 1441, removing the action to this Court. Defendant Ettlinger now moves to remand the cause to the State Court.

In support of his motion, Ettlinger submits two separate and distinct grounds. First, he contends that the action was improvidently removed in that all of the defendants did not join in the removal petition. Second, he contends that this Court does not have jurisdiction of the subject matter because there is an absence of complete diversity of citizenship between the parties. In respect to this latter contention, Ettlinger points out that the Court is under a duty to re-align the parties according to their real interests, and that, when this is done, he and defendant Sturgis, who are both citizens of California, fall on opposite sides of the case.

## The Necessity of the Joinder of All the Defendants in the Petition

█ The Federal Removal Statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants * * *." 28 U.S.C. § 1441(a). The words "the defendant or the defendants" have uniformly been construed to require that defendants be treated collectively. As a general rule, in the absence of a separable controversy, all the defendants who are sued jointly in the state court must join in the petition for removal.[1] The consent of a non-resident defendant who has not been served with process, howev-er, is not necessary to the removal of the cause. Since it is possible that such a defendant may never be served or, at least, may not be served before the time for filing a petition to remove has expired, it is only reasonable that the other defendant or defendants, who have been served, be permitted to exercise their right of removal in his absence.[2]

Three defendants in the instant case were served before the removal petition was filed. Defendant Mottola was served on September 25th and filed his appearance on October 23, 1968. Defendant Michelle Montgelas Vanderkief also filed her appearance on the same date. Defendant Ettlinger was served on October 11, 1968. The suit was subsequently removed solely upon the petition of Mottola, as Executor; Ettlinger and Vanderkief did not join in the petition.

The executor insists, however, that, under the circumstances of the case, it was not necessary to join the other defendants. Specifically, he contends that Ettlinger's consent is not necessary because his interest in the suit is opposed to the interests of the other defendants. The joinder or consent of Vanderkief and the other defendants is alleged to be unnecessary because the petitioner, as executor of the Estate, is the only real party in interest.

█ The denomination given the parties in the pleadings is not always conclusive. In determining whether federal jurisdiction exists, a federal district court is obliged to examine the underlying, substantive interests of the parties in the dispute. If a party's actual interest is not reflected by his alignment in the pleadings it is the duty of the court to rearrange the party on the proper

---

1. *See, e. g.,* Fugard v. Thierry, 265 F.Supp. 743, 745 (N.D.Ill.1967); Interstate Bakeries Corp. v. McKee Baking Co., 248 F.Supp. 946, 947 (W.D.Mo.1965); Heckleman v. Yellow Cab Transit Co., 45 F.Supp. 984 (E.D.Ill.1942). *See, generally,* 1A Moore, Federal Practice, ¶ 0.168[3.–2] (2d ed. 1965).

2. *See, e. g.,* Nelson v. Peter Kiewit Sons' Co., 130 F.Supp. 59, 61 (D.N.J.1955); Hutchins v. Priddy, 103 F.Supp. 601, 607 (W.D.Mo.1952); Heckleman v. Yellow Cab Transit Co., 45 F.Supp. 984, 985 (E.D.Ill.1942). *See, also,* 1A Moore, Federal Practice, ¶ 0.168[3.–2], at 1174 (2d ed. 1965).

side of the suit.[3] Such re-alignment is required both where it has the effect of defeating or creating jurisdiction.[4]

In the instant case, the pleadings clearly indicate that the real interest of defendant Ettlinger is in direct opposition to those of the executor and the residuary legatees. Ettlinger is a remainderman under the trusts in question. As a remainderman, he will realize a financial gain only if this Court holds that powers of appointment given to John D. Hertz, Jr. were not exercised in his will and that the residuary legatees are not entitled to the assets of the trusts. Under these circumstances, it is obvious that Ettlinger's position is diametrically opposed to that of the other defendants on the controlling issue.[5] The relative positions of the parties, therefore, requires that he be re-aligned. In respect to the other defendants, he may properly be characterized as a party-plaintiff.[6]

As in cases of original diversity jurisdiction, where the removal jurisdiction of a federal court is invoked on the basis of diversity, the characterization of a party as defendant or plaintiff in the state action is not determinative. The court is first obliged to examine the substantive interests of the parties and align them in a manner which is consistent with their actual interests.[7] The propriety of removal is then considered in the light of the parties' respective positions in the suit.[8]

Ettlinger suggests, nevertheless, a caveat to these general principles. He submits that a realignment of the parties is relevant only to the question of diversity for removal and that it is irrelevant to the general requirements of the joinder of all the defendants in the removal petition. Accordingly, he contends that his relative position in the instant suit does not excuse his omission from the removal petition.

---

3. *See, e. g.*, City of Indianapolis v. Chase National Bank, 314 U.S. 63, 69–70, 62 S.Ct. 15, 86 L.Ed. 47 (1941) ; Egyptian Novaculite Co. v. Stevenson, 8 F.2d 576, 579 (8th Cir. 1925) ; Ackert v. Ausman, 217 F.Supp. 934, 935 (S.D.N.Y.1963).

4. *See, generally,* 1 Barron & Holtzoff, Federal Practice & Procedure § 26, at 145–49 (Wright ed. 1960).

5. The only possible exception is defendant Helen Hertz Hexter who is both a residuary legatee and trust remainderman. Defendant Hexter, of course, will realize a financial gain in any event, whether or not the powers were exercised. Since she was served only recently, her position in the case will not be known until pertinent discovery or the filing of her initial pleadings.

6. While Ettlinger, himself, contends that realignment of the parties is necessary for the purpose of determining the existence of complete diversity, he objects to his characterization as a plaintiff. He submits that the trustee has actually elected to sue two groups of defendants, i. e., the residuary legatees and the remaindermen, and that since the trustee merely seeks a construction of the will, it cannot be assumed that it has aligned itself with either group of claimants. Accordingly, he fails to see why the executor and the residuary legatees should

not be deemed plaintiffs, rather than himself.

At best, this point poses only a semantic distinction. Despite the equivocal nature of the trustee's initial pleadings, his position in the context of the dispute is adverse to that of the executor and the residuary legatees. The trustee seeks a construction of the will to determine whether it exercised certain testamentary powers of appointment. The appropriate defendant in such an action is the executor of the estate, who has the duty to defend the provisions of the will. This would seem particularly true, where, as here, it is possible that the donee of the power has evidenced an intention to make the appointive property pass as part of his estate, for in such a case the executor possesses and administers the appointive fund along with the other assets of the estate. *See* authorities cited, note 18, *infra.* Surely, the trustee could not sue only a remainderman for instructions. Neither the trustee, nor the remainderman is under an obligation to uphold the provisions of the will.

In light of his complete hostility to other defendants, it would appear entirely proper to align defendant Ettlinger with the plaintiff.

7. *See* authorities cited in notes 3 and 4, *supra,* and accompanying text.

8. *See, generally,* 1A Moore, Federal Practice, ¶ 0.161[1], at 522 (2d ed. 1965).

This proposition would seem both unfounded and arbitrary. It is clear that it is the established policy in the federal courts to consider the actual realities of the dispute, rather than the nominal positions assigned to the parties by the pleader. The proposed distinction, if accepted, would create only an anomaly. There is no reason why the nominal position assigned to a party in the pleadings should control the question of joinder but be deemed immaterial to the question of diversity. The joinder requirement is designed only to insure a unanimous choice of a federal forum by the defendants. It cannot reasonably be understood to give a party who in reality occupies a position in conflict with that of other defendants a veto over the removal of the action.

■ This conclusion is buttressed by the language of the Supreme Court in its opinion in the Removal Cases, 100 U.S. 457, 25 L.Ed. 593 (1879). Construing the removal statute then in effect, the Court stated,

> Under the old law the pleadings only were looked at, and the rights of the parties in respect to a removal were determined solely according to the position they occupied as plaintiffs or defendants in the suit. . . . Under the new law the mere form of the pleadings may be put aside, and the parties placed on different sides of the matter in dispute according to the facts. This being done, *when all those on one side desire a removal, it may be had,* if the necessary citizenship exists. *Id.* at 469 (emphasis added).

While under the present removal statute only a defendant may remove, the observations of the Court concerning the alignment of the parties and their joinder in the removal petition are still pertinent. In the instant case, the fact, therefore, that petitioner did not obtain the joinder or consent of Ettlinger to the amended petition for removal does not render the petition defective. Since Ettlinger acually occupies the position of a party-plaintiff, his consent cannot be deemed necessary to the removal of the *suit.*[9]

■ Similarly, the omission of defendant Vanderkief from the removal petition is not a fatal defect. Vanderkief and the other residuary legatees are neither necessary nor indispensable parties to this action. Their interests are adequately represented by the executor, and their consent or joinder in the executor's petition for removal, therefore, was unnecessary.

■■ A defendant who seeks to remove a suit from a state to a federal court is entitled to contend that a party joined by the plaintiff is not a necessary party.[10] It is well established that the joinder of formal or unnecessary parties cannot prevent the removal of an action to a federal court.[11] In determining the propriety of removal on the basis of diversity of citizenship, only the citizenship of the real parties in interest controls.[12] The citizenship of formal or unnecessary parties is ignored.[13] Likewise, only indispensable defendants are required to join in the petition for re-

9. *See* Huntington v. Pinney, 126 F. 237, 238 (N.D.Calif.1900) ; 3A Moore, Federal Practice, ¶ 19.03[1], at 2150–51 (2d ed. 1961).

10. *E. g.,* Lee v. Lehigh Valley Coal Co., 267 U.S. 542, 543, 45 S.Ct. 385, 69 L.Ed. 782 (1925), Nunn v. Feltinton, 294 F. 2d 450, 453 (5th Cir. 1961), cert. denied, 369 U.S. 817, 82 S.Ct. 829, 7 L.Ed.2d 784 (1962) ; Morris v. E. I. DuPont de Nemours & Co., 68 F.2d 788, 791 (8th Cir. 1934).

11. *See, e. g.,* Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 189–190, 44 S.Ct. 266, 68 L.Ed. 628 (1924) ; Colman v. Shimer, 163 F.Supp. 347, 349–352 (W.D.Mich.1958) ; Spalding v. Southern Pac. Co., 19 F.R.D. 413, 414 (D.Ore.1956) ; Ford v. Adkins, 39 F. Supp. 472, 473 (E.D.Ill.1941).

12. *See* Colman v. Shimer, 163 F.Supp. 347, 349–350 (W.D.Mich.1958) ; 3A Moore, Federal Practice, ¶ 17.04 (2d ed. 1968).

13. *See* authorities cited in note 12, *supra.* *See, also,* 1A Moore, Federal Practice, ¶ 0.161[1], at 522–23 (2d ed. 1965).

moval; the consent of nominal or formal parties is not necessary.[14]

Defendant Mottola was duly appointed by a Florida probate court as the Executor of the Estate of John Hertz, Jr. Under Florida law, he is obligated to collect and take possession of the decedent's personal property wherever situated, pay the debts, taxes and expenses of administration and distribute the balance of the estate to the beneficiaries under the will. Fla.Stats.Ann. §§ 733.01, 734.04; Glidden v. Gutelius, 96 Fla. 834, 119 So. 140, 143, 120 So. 1 (1928). It is the duty of the Executor to collect all the indebtedness due the estate and to prosecute and defend any actions involving the will or estate. See Mills v. Hamilton, 121 Fla. 435, 163 So. 857 (1935); In re Estate of Blankenship v. J. L. Reed & Son, 136 So.2d 21, 22 (Fla.Ct.App. 1961); 1 Redfearn, Wills & Administration of Estates in Florida, § 266 (1965 Supp.). The executor is the representative not only of the decedent but also of those interested in the estate, such as creditors, heirs, legatees and devisees. "He occupies a position of trust and is a trustee in the broadest sense * * *." 1 Redfearn, op. cit. supra, § 266 (3d ed. 1957). For a failure in the performance of his duties, he is liable on his bond. Id. at § 294.

Federal authorities generally agree that the real party in interest is the party who, by substantive law possesses the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery.[15] It is now well established that personal representatives, such as executors, who under the law of the state are given control over litigation involving the estate, stand on their own citizenship in the federal courts, irrespective of the persons whom they represent. See, e.g., Mexican Central Ry. Co. v. Eckman, 187 U.S. 429, 433–434, 23 S.Ct. 211, 47 L.Ed. 245 (1903); City of New Orleans v. Gaines' Administrator, 138 U.S. 595, 606, 11 S.Ct. 428, 34 L.Ed. 1102 (1891); Nunn v. Feltinton, 294 F.2d 450, 453 (5th Cir. 1961), cert. denied, 369 U.S. 817, 82 S.Ct. 829, 7 L. Ed.2d 784 (1962); Fallat v. Gouran, 220 F.2d 325, 326–327 (3d Cir. 1955). By reason of his responsibility for the conduct of litigation and his liability on his official bond, the executor is the real party in interest and federal jurisdiction is determined by his citizenship rather than that of the persons whom he represents. See Atchison T. & S. F. Ry. Co. v. Phillips, 176 F. 663, 667–669 (9th Cir. 1910); Friele v. Schaffer, 177 F.Supp. 654, 656 (D. Mont. 1959). See, generally, 1 Barron & Holtzoff, Federal Practice & Procedure, § 26, at 149–53 (Wright Ed. 1961); 3A Moore, Federal Practice, ¶ 17.04, at 112–15 (2d ed. 1968).

An example of the application of these principles in an action involving a Florida administrator is found in the case of Twigg v. Flynn, 68 F.Supp. 23 (S.D. Fla. 1946). In Twigg, two estranged stepdaughters sued the administrator and other statutory heirs to establish themselves as the testator's sole heirs. The suit was removed to the federal court on the ground that diversity jurisdiction existed. On a motion to remand, the Court examined the status of the administrator's duties. The Court recognized that he was, in effect, a trustee of an express trust and that his duties, especially that of ultimate distribution,

14. See, e. g., Bradley v. Maryland Cas. Co., 382 F.2d 415, 419 (8th Cir. 1967); Stonybrook Tenants Ass'n, Inc. v. Alpert, 194 F.Supp. 552, 556 (D.Conn. 1961); Rodriguez v. Union Oil Co. of Calif., 121 F.Supp. 824, 827 (S.D.Calif. 1954).

15. See, e. g., Gagliano ex rel. Gagliano v. Bernsen, 243 F.2d 880, 882 (5th Cir. 1957); Dixey v. Federal Compress & Warehouse Co., 132 F.2d 275, 278–279 (8th Cir. 1942); Race v. Hay, 28 F.R.D. 354 (N.D.Ind.1961). See, also, 2 Barron & Holtzoff, Federal Practice, § 482, at 7–8 (Wright Ed. 1961); Clark & Moore, A New Federal Civil Procedure, 44 Yale L.J. 1291, 1310–12 (1935).

would be materially affected by the outcome of the case. The Court then stated that, "[A]n administrator or executor is a real party in interest when he is bringing, or, as here, defending, a suit for the estate he represents." *Id.* at 24. The Court, looking solely at the citizenship of the administrator, remanded the cause because his citizenship was of the same state as that of the plaintiffs.

Notwithstanding the apparent authority of the executor, Ettlinger maintains that the executor is not the controlling party and that Vanderkief and the other residuary legatees cannot be ignored. He points out that, under the doctrine of relation back, if a testamentary power of appointment is exercised, the appointees take under the instrument creating the power and not under the will.[16] He submits, accordingly, that whether or not the power was exercised, the executor has no interest in the property. In essence, he contends that Mottola, the executor, has no interest in the trust assets because they will never become part of the estate he is charged with administering.

It must be noted, however, that there are at least two recognized exceptions to the doctrine of relation back which permit property subject to a power of appointment to pass as part of the donee's estate. The first exception arises when the donee of the power shows an intention to make the appointive property pass as part of his estate. This will occur, for example, if the donee masses the appointive property with his own, as by a residuary appointment or by referring to it as his own. In such a case, the donee's wishes will be given effect and his executor will possess and administer the appointive fund along with the other assets of the estate.[17]

Although the will in the instant case does not expressly refer to or exercise any power of appointment, it contains a residuary clause which purports to dispose of "all the rest, residue and remainder of * * * [the testator's] property of whatever kind and wherever situated." It is possible that the donee intended to have the property of the trusts in question pass as part of his estate. Rather than casting doubt on his interest in the property, the circumstances give weight to the argument that Mottola has a duty as executor to attempt to obtain these assets for the estate.

The second exception arises when a donee of a general power of appointment has executed the power in favor of volunteers, i.e., other than his creditors. If the donee's own estate is insufficient to pay its creditors, the property subject to the power will be considered an equitable asset of his estate for the benefit of creditors, and the appointees will take subject to the claims of the creditors.[18] This contingency also increases the responsibility of Mottola, as executor, towards the corpus of the trusts in question.

Ettlinger also points out that traditionally when there are several claimants to a specific fund, they are all considered not only proper, but necessary or indispensable parties. He argues that this is another reason why the executor

16. *See* Oglesby v. Springfield Marine Bank, 385 Ill. 414, 52 N.E.2d 1000 (1944); Hogarth-Swann v. Weed, 274 Mass. 125, 174 N.E. 314 (1931). *Cf.* Kane v. Schofield, 332 Ill.App. 505, 76 N.E.2d 216 (1947).

17. *See* In re Breault's Estate, 29 Ill.2d 165, 174–175, 193 N.E.2d 824, 829 (1963); Bradford v. Andrew, 308 Ill. 458, 463–465, 139 N.E. 922, 924–925 (1923); Logan v. Harris Trust and Savings Bk., 8 Ill.App.2d 61, 69–72, 130 N.E.2d 211, 216–217 (1955). *See, also,* Carey & Schuyler, Illinois Law of Future Interests, § 364, at 493 (1941).

18. *See* Northern Trust Co. v. Porter, 368 Ill. 256, 266, 13 N.E.2d 487, 492 (1938); People v. Kaiser, 306 Ill. 313, 317, 137 N.E. 826, 828 (1922); Gilman v. Bell, 99 Ill. 144 (1881). *But, see,* Boyle v. John M. Smyth Co., 248 Ill.App. 57, 88–89 (1st Dist. 1928). *See, generally,* Annot. 59 A.L.R. 1513 (1929), supp. 97 A.L.R. 1071 (1935), and 121 A.L.R. 803 (1939).

cannot be considered the controlling party and the joinder and citizenship of Vanderkief and the other residuary legatees must be considered.

■ Despite the fact that the residuary legatees might ultimately benefit from a judgment on behalf of the estate, they cannot be considered anything more than nominal or formal parties. To be considered an indispensable, or necessary party, a litigant must not only have an interest in the dispute, but must also be so situated that the disposition of the action in his absence might be prejudicial to his interest.[19] By virtue of his duties and obligations under Florida law, the executor adequately represents the interests of all the residuary legatees under the will. He is under a fiduciary duty to the estate and its beneficiaries. He is not absolved from this duty until a final distribution of the assets of the estate pursuant to an order of the probate court. See Fla.Stats.Ann. §§ 734.22, 734.23. For a failure in the performance of his duties, he is liable on his bond. Commensurate with his fiduciary status, he has the authority to collect the assets of the estate and to prosecute and defend any actions involving the will or estate. It is clear that the residuary legatees are sufficiently protected and that the executor is the only necessary or indispensable party. Cf. McElroy v. Security Nat'l. Bk., 215 F. Supp. 775, 779 (D. Kan. 1963); United States v. Swanson, 75 F.Supp. 118, 125 (D. Neb. 1947).

■■ Nor may the residuary legatees be considered "proper" parties. Before a litigant may be considered a proper party, he must first be a real party in interest. The residuary legatees have only a beneficial interest in the collection of the assets of the estate. Under Florida law, defendant Mottola, as executor of the estate, is specifically vested with the duty and right to collect, control, and distribute the personal property of the decedent. By virtue of this authority, he represents the entire interest which may be claimed by the residuary legatees in the trust property and all rights of action in respect to it. Thus, Mottola is the only real party in interest and the only proper party.

### Diversity of Citizenship

■ Once the parties to the instant action are aligned according to their respective interests, Ettlinger, a trust remainderman, and defendant Sturgis, a residuary legatee, fall upon opposite sides of the suit.[20] In light of this, Ettlinger asserts that diversity jurisdiction is destroyed by the fact that Ettlinger and Sturgis are both residents of California.

As already fully discussed, defendant Mottola, by virtue of his duties and obligations as Executor of the Estate of John Hertz, Jr. under Florida law, is the real party in interest to this action, and only his citizenship is material to the removal jurisdiction of this Court.[21] Defendant Sturgis, as well as the other residuary legatees, can only be deemed to be formal or nominal parties to the action and his joinder does not prevent the removal of the action nor defeat federal jurisdiction if diversity otherwise exists.

Disregarding the nominal parties, then, the action, at least until Helen Hexter determines her position, lies wholly between the First National Bank and Ettlinger on one side and Mottola on the other. The First National Bank is a citizen of Illinois. Ettlinger is a citizen of California and defendant Mottola is a citizen of Florida. It is obvious, therefore, that complete diversity of citizenship exists between the parties.

For the foregoing reasons, the motion to remand this action to the Circuit Court of Cook County must be denied. An appropriate order will enter.

19. See Shields v. Barrow, 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158 (1854); Wright, Federal Courts, § 70, at 262–63 (1963).

20. See pp. 5–7 and authorities cited in notes 3–8, supra.

21. See pp. 10–13, supra.